IN THE

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

―――――――――――――

August Term 2023
Argued: January 24, 2024
Decided: June 12, 2024

No. 23-379

―――――――――――――

NICOLE COSTIN, individually and on behalf of her minor son, BABY A,

Plaintiff-Appellant,

v.

GLENS FALLS HOSPITAL, KEVIN M. GRASSI, M.D., STACY L. RALPH, KAREN
RANTTILA, LYNETTE M. BISS, NICOLE BENNETT, JENNIFER NIX, AMY HOOPER, JODIE
SMITH, STEPHANIE DECHENE, ALYCIA N. GREGORY,

Defendants-Appellees,

JANE DOES 1-7,

Defendant.

―――――――――――――

Before: LIVINGSTON, Chief Judge, JACOBS and LOHIER, Circuit Judges.

Nicole Costin, both individually and on behalf of her minor son, sued
Glens Falls Hospital and several of its individual doctors, nurses, and social

workers.   Costin alleges that the Hospital discriminated against her on the basis of her substance-abuse disorder in violation of the Americans with Disabilities Act and the Rehabilitation Act.   Costin also alleges state-law claims.

The United States District Court for the Northern District of New York (D'Agostino, <u>J.</u>) dismissed Costin's action; the district court concluded that Costin failed to plausibly allege that she was discriminated against by reason of her disability.   And, having dismissed Costin's federal claims, the district court declined to exercise supplemental jurisdiction over her state-law claims.   We **AFFIRM** in part, **VACATE** in part, and **REMAND** for further proceedings consistent with this opinion.

———————————

FRANCES RODRIGUEZ, Schulte Roth & Zabel LLP, New York, NY (Taleah E. Jennings, John P. Mixon, Schulte Roth & Zabel LLP, New York, NY, <u>on the briefs</u>), <u>for Plaintiff-Appellant</u>.

ERIC C. SCHWENKER, McPhillips Fitzgerald & Cullum LLP, Glens Falls, NY, <u>for Defendants-Appellees</u> Glens Falls Hospital, Kevin M. Grassi, M.D., Stacy L. Ralph, Jennifer Nix, Amy Hooper, Jodie Smith, Stephanie Dechene, and Alycia N. Gregory.

CHRISTOPHER J. DANIEL, Martin Clearwater & Bell LLP, White Plains, NY (Barbara D. Goldberg, Rosaleen T. McCrory, Martin Clearwater & Bell LLP, White Plains, NY, <u>on the brief</u>), <u>for Defendant-Appellee</u> Nicole Bennett.

Cathleen Kelly Rebar, Patrick Jones Healey, Rebar Kelly, Blue Bell, PA, <u>for Defendant-Appellee</u> Karen Ranttila.

JONATHAN L. BACKER, Attorney, Appellate Section, Civil Rights Division, U.S. Department of Justice, Washington, DC (Samuel R. Bagenstos, General

Counsel, Stephanie O. Akpa, Deputy General Counsel, Aaron D. Schuman, Megan Dixon, Cary LaCheen, Attorneys, Civil Rights Division, U.S. Department of Health and Human Services, Washington, DC; Kristen Clarke, Assistant Attorney General, Nicolas Y. Riley, Attorney, Appellate Section, Civil Rights Division, U.S. Department of Justice, Washington, DC, <u>on the brief</u>), <u>for Amicus Curiae</u> the United States, <u>in support of Plaintiff-Appellant</u>.

DENNIS JACOBS, <u>Circuit Judge</u>:

Nicole Costin, both individually and on behalf of her minor son ("Baby A"), sues Glens Falls Hospital (the "Hospital") and several of its individual doctors, nurses, and social workers (collectively with the Hospital, the "Defendants").   Most relevant to this appeal, Costin alleges that the Hospital discriminated against her on the basis of her substance-abuse disorder in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189, and Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794.   Several state-law claims are also alleged against various Defendants, including claims for, <u>inter alia</u>, medical malpractice, negligence, and false imprisonment.

According to the Amended Complaint, Costin went to the Hospital to give

birth and, when one or more of the Defendants learned that she takes a drug to control her substance-abuse disorder, measures were taken, driven by stereotype or Hospital policy (or both), to: (1) conduct drug tests without informed consent; (2) report Costin to the New York State Child Abuse and Maltreatment Register pursuant to a drug test Defendants were aware produced a false positive result; (3) withhold pain relief; (4) accelerate Costin's labor without consent; (5) keep Costin and Baby A in the Hospital; (6) refuse to explain alternative treatments available to Baby A; and (7) refuse to correct the Hospital's actions.

The United States District Court for the Northern District of New York (D'Agostino, J.) dismissed Costin's action; the district court concluded that Costin failed to state a claim under both the ADA and RA because she failed to plausibly allege that she was discriminated against by reason of her disability: substance-abuse disorder. And, having dismissed Costin's federal claims, the district court declined to exercise supplemental jurisdiction over her state-law claims. **AFFIRMED** in part, **VACATED** in part, and **REMANDED** for further proceedings consistent with this opinion.

## I.

## A.

When Costin's water broke in March 2021, she was met at the Hospital by Nurse Stacy Ralph.[1]   Nurse Ralph and Costin discussed her medical history and birth plan, including Costin's wish for an epidural injection.   When asked what medications she was taking, Costin responded that she takes Subutex twice a day (as prescribed by her primary care physician).   Subutex, like related medication Suboxone, is used to treat individuals with substance-abuse disorder. Notwithstanding her treatment with Subutex and rehabilitation, Costin "still has substance abuse disorder[,]" but she "is no longer using illicit opioids."   A26 (Am. Compl. ¶ 29).

After a change in shift, Nurse Ralph informed the incoming nurse, Nurse Karen Ranttila, that Costin was taking Subutex.   Nurse Ralph also advised that the Hospital was awaiting the results from a urine-toxicology screen, a test that Costin was not informed about and did not consent to.

As Costin's labor resulted in intense contractions that caused her to go "in

---

[1]  We accept the Amended Complaint's well-pleaded factual allegations as true and construe them in Costin's favor.   Muto v. CBS Corp., 668 F.3d 53, 56 (2d Cir. 2012).

and out of consciousness[,]" she asked Nurse Ranttila to prepare her epidural

shot; Nurse Ranttila responded that the Hospital's anesthesiologist was on call

and that she would contact him to start the epidural process.   A27–28 (Am.

Compl. ¶ 33).   Over the next hour, Costin's contractions intensified, but she did

not receive an epidural.

At one point, Nurse Midwife Nicole Bennett entered Costin's hospital

room and "blurted" out, "[y]our urine test came back with positive results for

both cocaine and PCP."   A28 (Am. Compl. ¶ 34).   Costin "immediately

informed everyone in the room that the positive results were wrong, she did not

take cocaine or PCP during her pregnancy, and the [H]ospital must have made

an error in the lab or tested the wrong patient's urine."   Id.   Costin asked Nurse

Ranttila to immediately redo the urine test or to conduct a blood test, and Costin

continued to "beg" for an epidural.   A28 (Am. Compl. ¶¶ 34–35).

As Nurse Ranttila collected a second urine sample, she asked Costin if she

was "sure [she] didn't do cocaine before coming in?"   A28 (Am. Compl. ¶ 35)

(internal quotation marks omitted).   Nurse Ranttila also stated that (1) the

Hospital "drug tests pregnant women who take Suboxone or Subutex 'all the

time'"; and (2) the Hospital "compares Subutex patients' prescribed dosage

against the levels in their system to try to determine whether they are illegally selling their pills." Id. (emphasis omitted).

Approximately one hour later, Nurse Midwife Bennett informed Costin that her second urine sample tested negative for all substances. Nurse Ranttila informed Costin that the Hospital was withholding the epidural. Hospital staff then connected a bag of fluids to Costin's IV drip. Costin again asked for an epidural, but Nurse Ranttila informed Costin that the bag of fluids contained Pitocin (a drug given to accelerate labor) and that the Hospital staff were waiting for her to finish receiving the fluids. Although Costin continued to ask for an epidural and did not want to accelerate her labor, Hospital staff refused to administer pain relief, ignored her request to withhold the Pitocin, and proceeded with inducing labor.

When Baby A was born later that evening, he had a bruised face, burst blood vessels in both eyes, and severe jaundice, attributable to the "violent nature" of his birth. A29–31 (Am. Compl. ¶¶ 38, 41, 42). Despite Costin's protests, Nurse Ranttila collected Baby A's urine and meconium to run additional toxicology screenings. Baby A was then placed into an incubator, which prevented him from having skin-to-skin contact with Costin. During this

same period, Hospital staff sewed Costin's vaginal tear closed without any form of pain relief, despite Costin's "relentless[ ] yelling . . . for them to stop."   A30 (Am. Compl. ¶ 40).

The next day and the day after, Costin wanted to leave the Hospital to take a shower.   Nurse Jodie Smith told Costin that she could not leave until she spoke to the attending physician, who would be visiting her room by 4:00 p.m. But the Hospital was actually delaying Costin's discharge because it had contacted the New York State Child Abuse and Maltreatment Register "to report suspicions that . . . Costin was 'responsible for causing or allowing to be inflicted injury, abuse, or maltreatment'" on Baby A.   A33 (Am. Compl. ¶ 49).   A caseworker from Warren County Child Protective Services ("CPS") arrived at approximately 4:00 p.m. and directed Costin to submit to a third urine-screening test.   The caseworker also directed Baby A's father to take a drug test.   After the caseworker left, Costin was allowed to go home to shower.

Upon her return to the Hospital, Costin met with Hospital representatives, who assured her "that they would change the manner in which they operate so that no patient is ever treated the way that Ms. Costin was treated," and told her that "CPS would not conduct a home visit until further notice, given the

circumstances," and that a social worker employed by the Hospital, "would follow the case." A37 (Am Compl. ¶ 58). Nevertheless, the Hospital refused to discharge Baby A until CPS could conduct a home visit. When Costin expressed confusion as to why CPS was still involved, Dr. Kevin Grassi informed Costin that the Hospital "reports possible child abuse by *every* patient that comes in on Suboxone." A38 (Am. Compl. ¶ 60) (some emphasis omitted).

The next day, the Hospital informed Costin that her initial drug test was a false-positive and that CPS had closed its investigation. She was then allowed to go home with Baby A. But, within five minutes of Costin's return home, the CPS caseworker arrived and informed Costin that the CPS investigation would not be closed without the test results from Baby A's meconium. Ultimately, Costin received a letter from CPS stating that the Hospital's suspicions of child abuse were unfounded.

**B.**

Costin's lawsuit alleges violations of Title III of the ADA, Section 504 of the RA, and numerous state laws. Most relevant to this appeal, Costin alleges that the Hospital violated the ADA and RA through: (1) the drug tests conducted without informed consent; (2) the report to CPS based on a drug test that it was

aware produced a false-positive result; (3) the withholding of pain relief; (4) the

induction of labor without consent; (5) the decision to keep Costin and Baby A in

the Hospital; (6) the refusal to explain alternative treatments available to Baby A;

and (7) the failure to take steps to remedy the Hospital's abuse.

Defendants moved to dismiss the complaint for, inter alia, lack of standing

and failure to state a claim.   The district court ruled that Costin had standing but

that she failed to plausibly allege that the Hospital discriminated against her by

reason of her disability, and dismissed her ADA and RA claims with prejudice.

And, having dismissed the federal claims, the district court declined to exercise

supplemental jurisdiction over the state law claims, and dismissed them without

prejudice.

We review de novo a district court's grant of a motion to dismiss,

"constru[ing] the complaint liberally, accepting all factual allegations in the

complaint as true, and drawing all reasonable inferences in the plaintiff's favor."

Palin v. New York Times Co., 940 F.3d 804, 809 (2d Cir. 2019) (quoting Elias v.

Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017)).

## II.

Defendants contend that Costin lacks standing to seek injunctive relief

(which is the only relief available under Title III of the ADA), because she has not shown a sufficient likelihood that she will have to return to the Hospital's labor-and-delivery department.   <u>See</u> 42 U.S.C. § 12188(a)(1); 42 U.S.C. § 2000a-3(a); <u>Powell v. Nat'l Bd. of Med. Exam'rs</u>, 364 F.3d 79, 86 (2d Cir. 2004) ("Monetary relief, however, is not available to private individuals under Title III of the ADA.").   We disagree.

For Costin "to have Article III standing, [s]he must establish three things: (1) that [s]he has an injury in fact; (2) that there is a causal connection between h[er] injury and the conduct complained of; and (3) that h[er] injury will be redressed by a favorable judicial decision."   <u>Harty v. W. Point Realty, Inc.</u>, 28 F.4th 435, 442 (2d Cir. 2022).   For purposes of injunctive relief, she may not rely solely on past injury, but also must establish that "she is likely to be harmed again in the future in a similar way."   <u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220, 239 (2d Cir. 2016).

In an ADA suit seeking injunctive relief, a plaintiff has suffered an injury in fact when:

> (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based

on the past frequency of plaintiff's visits and the
proximity of defendants' [businesses] to plaintiff's home,
that plaintiff intended to return to the subject location.

Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 74 (2d Cir. 2022) (quoting Kreisler
v. Second Ave. Diner Corp., 731 F.3d 184, 187–88 (2d Cir. 2013) (per curiam)).

As to the third factor, the one chiefly in dispute here, "the central inquiry is not
whether a complaint pleads the magic words that a plaintiff intends to return,
but if, examined under the totality of all relevant facts, the plaintiff plausibly
alleges a real and immediate threat of future injury."   Id. at 75 (internal
quotation marks omitted).

Costin plausibly alleges her intent to return to the Hospital.   She alleges
(1) that the Hospital is "the only hospital within 15 miles of her home"; (2) that
prior to giving birth to Baby A, Costin had been a patient at the Hospital on at
least three occasions, including on an emergency basis; (3) the Hospital is the
only hospital she can go to in emergency situations; (4) since Baby A's birth, "she
has already had to return [to the Hospital] with Baby A's father during an
emergency"; and (5) that "[she] is still very much of the age range where having
another baby is a possibility."   A43–44 (Am. Compl. ¶¶ 75, 78).

Although we recognize that Costin did not directly allege her intent to

have another child, we conclude that Costin needed to allege only that she was likely to return to the Hospital as a patient, not necessarily a pregnant one.[2] This is so because Costin's allegations suggest that the policies she seeks to enjoin are not specific to the maternity ward.    A38 (Am. Compl. ¶ 60) (alleging that the Hospital "reports possible child abuse by *every* patient that comes in on Suboxone" (some emphasis omitted)); see also A28 (Am. Compl. ¶ 35) (the Hospital "compares *Subutex patients'* prescribed dosage against the levels in their system to try to determine whether they are illegally selling their pills" (emphasis added)).[3]    Drawing inferences in Costin's favor, she has plausibly alleged that the Hospital policies discriminate against individuals with substance-abuse disorder because they rely on stereotyped and pejorative views of Subutex users, regardless of whether those users are pregnant.

Considering the totality of the relevant factors, we conclude that Costin

---

[2]  At oral argument, Costin's attorney stated that Costin is now pregnant.    Oral Ar. Recording at 12:05–12:20.    This happy news does not impact our standing analysis.

[3]  Although Nurse Ranttila allegedly informed Costin that the Hospital drug tests "pregnant women" who take Suboxone or Subutex, A28 (Am. Compl. ¶ 35), we do not construe this to mean that the Hospital drug tests *only* pregnant women who take Suboxone or Subutex.

has plausibly alleged a substantial probability that she will have to return to the Hospital as a patient in some capacity.   See Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (allegation of future injury is sufficient if there is "a substantial risk that the harm will occur" (internal quotation marks omitted)). Costin has standing to assert a claim for injunctive relief.

### III.

The district court ruled that Costin failed to state a claim under either the ADA or the RA.   We agree in part.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."   42 U.S.C. § 12182(a).   The Rehabilitation Act makes it unlawful for "any program or activity receiving Federal financial assistance" to discriminate against an individual "solely by reason of his or her disability."   29 U.S.C. § 794(a).

Although the RA and the ADA are largely coextensive, the statutory text of the respective causation elements differ.   Compare 42 U.S.C. § 12182 ("on the

basis of disability"), with 29 U.S.C. § 794(a) ("solely by reason of her or his

disability").   See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,

294 F.3d 35, 49 (2d Cir. 2002), superseded by statute on other grounds, ADA

Amendments of 2008, Pub. L. No. 110–325, 122 Stat. 3553.   But with respect to

the ADA and RA claims that are based on the Hospital's allegedly discriminatory

policies, Costin has plausibly alleged causation under both standards.   We,

therefore, discuss Costin's RA and ADA claims together.   See Powell v. Nat'l Bd.

of Med. Examiners, 364 F.3d 79, 85 (2d Cir.), opinion corrected, 511 F.3d 238 (2d

Cir. 2004) ("Since the standards adopted by Titles II and III of the ADA are, in

most cases, the same as those required under the Rehabilitation Act . . . we

consider the merits of these claims together.").

      To establish a prima facie violation under either statute, it must be shown

that: (1) the plaintiff is a qualified individual with a disability; (2) the defendant

is an "entity subject to the [A]cts"; and (3) the plaintiff "was denied the

opportunity to participate in or benefit from . . . services, programs, or activities"

or was "otherwise discriminated against" on the basis of disability.   Wright v.

N.Y. State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016).

      The parties do not dispute that the Hospital is subject to the ADA and RA,

or that Costin's substance-abuse disorder is a disability.   See A26 (Am. Compl. ¶ 29) (alleging that, when untreated by Subutex or Suboxone, Costin is "unable to care for herself").   The only issue in dispute is whether the Hospital discriminated against Costin because of her disability.

In McGugan v. Aldana-Bernier, we explained that "the term 'discrimination' is potentially confusing in the context of medical treatment" because:

> The word has two very different significations--one positive, the other pejorative.   In its positive sense, one discriminates by drawing distinctions that are relevant to the qualities or characteristics of the thing observed.   In its negative or pejorative sense, one discriminates by withholding advantages or inflicting disadvantages on the basis of irrelevant criteria, under the influence of irrational bias.

752 F.3d 224, 231 (2d Cir. 2014).   Since disability is so often associated with a medical condition, the distinction between the positive (or benign) and pejorative forms of discrimination is critical to prevent the federal statutes from displacing the state law causes of action for malpractice.   The federal law of discrimination does not review the conduct of "[a] doctor who administers a medical treatment to a patient (or withholds it) because the doctor's medical training leads her to

conclude that the treatment is medically appropriate (or inappropriate)[.]" Id.

If the treatment is merely deficient, imprudent, or harmful, the matter is one of

medical malpractice.

> This is true even if the doctor's medical understanding is flawed and her knowledge is deficient. On the other hand, a doctor who inflicts or withholds a type of medical treatment for reasons having no relevance to medical appropriateness--reasons dictated by bias rather than medical knowledge--is practicing the pejorative form of discrimination.

Id. Thus, "a plaintiff pleads an actionable claim of discrimination in the

medical treatment context under the ADA or the Rehabilitation Act if she alleges

that the defendants made treatment decisions based on factors that are 'unrelated

to, and thus improper to consideration of' the inquiry in question." Id. at 234.

We agree with the district court that Costin's claims are barred by

McGugan, at least insofar as she alleges that the Hospital violated the ADA and

the RA by denying her an epidural, accelerating her labor, failing to discharge

Baby A, preventing skin-to-skin contact between Costin and Baby A, and failing

to explain treatment alternatives. Under the circumstances alleged here,

whether to administer pain medication or accelerate labor, and how to treat a

jaundiced infant in the Hospital, clearly constitute medical decisions. Even if

this decision-making was faulty or constituted malpractice, it cannot support a claim under the RA or ADA.   See id. at 232 (explaining that doctor's treatment decision "is not discrimination in violation of the statute, even if the doctor's medical analysis is flawed," and that "[s]uch a decision may be malpractice, but it is not discrimination").   Medical decisions based on experience and judgment can easily be mischaracterized as the use of stereotypes.

## IV.

We disagree, however, with the dismissal of Costin's RA and ADA claims to the extent they are based on the Hospital's instigation of a CPS investigation and its administration of a drug test.   As to the CPS investigation, Costin alleges that she was told the Hospital "reports possible child abuse by *every* patient that comes in on Suboxone."   A38 (Am. Compl. ¶ 60) (some emphasis omitted). With respect to the drug test, Costin alleges that she was told the Hospital "drug tests pregnant women who take Suboxone or Subutex 'all the time.'"   A28 (Am. Compl. ¶ 35) (emphasis omitted).   And Costin was told that the Hospital compares Subutex patients' test results with their prescribed doses in order to "determine whether they are illegally selling their pills."   Id.   Costin has thus plausibly alleged that the Hospital has blanket policies with respect to Subutex

users to (1) report them to CPS for potential child abuse, and (2) drug test them in order to determine whether they are illegally selling their pills.

Costin has sufficiently stated a <u>prima facie</u> case based on the Hospital's instigation of the CPS investigation.   Her allegation that the Hospital always reports patients taking Subutex for possible child abuse supports the inference that the Hospital instigated the CPS investigation due solely to Costin's history of substance-abuse disorder.   And--as the Defendants concede--<u>McGugan</u> does not bar Costin's claim based on the alleged CPS-reporting policy, because such a policy (on these alleged facts) has no relevance to medical decision-making.

We also decline, at this stage in the litigation, to hold that Costin's claims based on the CPS policy must be dismissed because the Hospital is a mandatory reporter pursuant to  the Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. § 5101, <u>et seq.</u>   CAPTA requires that states have a policy to notify CPS when an infant is "born with and identified as being affected by substance abuse or withdrawal symptoms resulting from prenatal drug exposure."   42 U.S.C. § 5106a(b)(2)(B)(ii).   But Costin does not allege that the Hospital made its report to CPS based on Baby A's symptoms; rather, she alleges that the Hospital "reports possible child abuse by every patient that comes in on

Suboxone." A38 (Am. Compl. ¶ 60) (emphasis omitted). Construing this allegation in Costin's favor, we cannot conclude that the Hospital was required to report her to CPS pursuant to CAPTA. We therefore vacate the dismissal of Costin's ADA and RA claims to the extent they are based on the Hospital's instigation of the CPS investigation.[4]

The drug-testing claim presents a closer question. Costin has plausibly alleged that the Hospital has a blanket policy of drug testing Subutex users. The blanket nature of the policy is not dispositive, however: We think it possible under McGugan for a hospital, acting pursuant to a medical decision, to institute a blanket policy that subjects a disabled individual to different medical testing or treatment based on that individual's disability without exposing itself to liability under the ADA or RA.

But, in this case, Costin alleges more than just a policy that subjected her to a drug test based on her disability; she specifically alleges that the policy is based on a discriminatory *motive*. Costin alleges that she was told that the purpose of the policy is to determine whether Subutex users are illegally selling their pills.

_____

[4] To the extent that Costin alleges that she was prevented from leaving the Hospital due solely to this policy, we vacate and remand that claim as well.

Drawing all inferences in Costin's favor, her allegations support an inference that the Hospital has a blanket policy of drug-testing patients who take Subutex based on a pejorative view of them as dishonest (or, worse, drug-dealers), rather than based on any medical rationale. See McGugan, 752 F.3d at 231 (explaining that an allegation that a treatment decision was based on "reasons dictated by bias rather than medical knowledge" would state a claim under the RA); Green v. City of New York, 465 F.3d 65, 78 (2d Cir. 2006) (vacating grant of summary judgment because a reasonable jury could conclude that defendant violated the ADA from evidence of a "stereotypical view" of plaintiff's disability). We therefore vacate the dismissal of Costin's ADA and RA claims to the extent they are based on the Hospital's alleged drug-test policy.

Of course, our ruling does not resolve the ultimate question of whether the Hospital can be held *liable* under either the ADA or the RA. That determination requires further proceedings, including adjudication of any affirmative defenses that the Hospital might raise. And we further emphasize that our remand is narrow: Costin has stated a claim only as to the CPS investigation and the administration of the drug test, both pursuant to the Hospital's allegedly discriminatory policies. Damages for liability under the RA are likewise

limited.

## V.

Finally, the district court declined to exercise supplemental jurisdiction over Costin's state- and common-law claims after dismissing all federal claims. See 28 U.S.C. § 1367(c)(3). Because we vacate in part the dismissal of Costin's federal claims, we vacate that much of the judgment declining to exercise supplemental jurisdiction. See, e.g., Grandon v. Merrill Lynch & Co., Inc., 147 F.3d 184, 195 (2d Cir. 1998).

We have considered the parties' other arguments and find them unavailing. Accordingly, we **AFFIRM** in part, **VACATE** in part, and **REMAND** for further proceedings consistent with this opinion.